Ms. Hyatt, is that correct? That's right, Your Honor. Okay, you're up for seat. Thank you, Your Honor. If I may, I'd like to reserve three minutes for rebuttal. Okay. May it please the Court, my name is Kathy Hyatt and I represent the petitioner Robert Atkinson Jr. The NLRB has a duty to protect employees' rights to support a union and support its leadership or to oppose it. The question before the Court today is whether the NLRB can delegate that. There's some voices talking over one another. I'm so sorry. I'm not experiencing any sound anywhere else. What I can try to do is mute your MS Asbrock. That may help with the audio. If it doesn't, let us know, all right. Okay, I'm sorry. Ms. Hyatt, just go ahead. Is it okay now? Okay, let me set my... It's not because we can't hear you. Is it okay or not? It's not okay? All right, Ms. Asbrock, what you can try to do, judges, if this is all right, is Ms. Asbrock, if you disconnect and reconnect, that may work out any kinks. It's okay now? Okay. We've been on a roll, no problems today. Sorry, the last argument. Maybe the computers are getting tired. Ms. Hyatt, try it again. Thank you, Ian. So the NLRB has a duty to protect the right of employees both to support their union and to oppose it. And one of the questions before this Court today is whether the NLRB can delegate that duty to the very union opposed by an employee that seeks the Board's protection. And another question before the Court today is whether the Board can do so because, not despite, but because the targets of the protected activity did not explain why they dismissed the grievance, the union employee's grievance. Atkinson raised three arguments against deferral in this case. On the first, which resulted in the overruling of Babcock, the Board ignored this Court's precedent and that of five other circuits. On the second, the question of a fair and regular proceeding, the Board ignored its own precedent and failed to engage the facts. And with respect to the third, the fact that the union did not complete arbitration of one of the two ULPs, the Board ignored the argument altogether. I hear a hook. Ms. Haddock, I'm sorry. Problem? Can't hear? All right. Ms. Hasbrock, can you unmute your end for me? All right. What I suggest is what I suggested before. So, if you disconnect and then just go back to the same invitation to reconnect, I'll bring you right back in. Hopefully, that will resolve the issue. And Ms. Haddock, obviously, your clock is not running while this is happening. Mr. Hill, are you okay? You can hear okay? Okay. Yeah, no problem. Okay. Here she comes. All right. Ms. Hasbrock, can you hear me? Yes. Okay. Testing 1, 2, 3, 4, 5, just making sure that's okay? Yes. All right. Seems like we're good to go. Okay. Thank you. Okay, Ms. Haddock, you're on point three. Thank you. So, with turning to the first rounds, which was the adoption of a new deferral standard, the fundamental problem here is that the board confounds an elementary legal distinction, that between contract claims and statutory claims. And by making this confusion, the board undermines a linchpin of the NLRA, the principle of employee-free choice, the idea that employees have a right to support or oppose a union and to choose the union with any that they because it doesn't engage the distinction between contractual and statutory rights. And the standard announced in this case doesn't do so either. The board implies that the Steelworkers Trilogy is about the arbitration of statutory claims when it is emphatically about contractual ones. The board accuses anyone who thinks that an arbitrator might confine themselves to the contract of mistrusting arbitrators when the Supreme Court has held that to do otherwise undermines, is illegitimate because the arbitrator's authority stems from the contract. The NLRA in its text clearly distinguishes between contractual claims and statutory ones, giving one to the NLRB and giving contractual claims to arbitrators and statutory claims to the NLRB. And the board in this case fails to track that distinction. The board in this case implies that the resolution of contractual claims necessarily resolve statutory ones when the courts have held repeatedly that it does not. As the D.C. Circuit spelled out well, there's more than one possible relationship between contractual and statutory rights. A contract can incorporate a statutory right, but it certainly doesn't have to. A contract can purport to waive a statutory right, but it doesn't have to, and sometimes it can't. Or a contract might do none of the above and set up its own scheme of rights that doesn't particularly relate to the statute one way or the other. To make a rational decision about deferral, you have to know which of these occurred in a particular case. For example, if a contract permissively waives a statutory right, then when the contract claim is done, no statutory claim remains. Generally, deferral will make complete sense. But if a contract impermissibly waives a contractual right, then the D.C. Circuit pointed out the board has no business deferring to a grievance decision that purports to waive a statutory right that cannot be waived. And I want to point out as well that in the situation of an impermissible waiver, the duty of the arbitrator is to enforce the contract as written, to enforce that waiver. Arbitrators have no business, have no authority rewriting or second-guessing the contract. So if the board says, as it does in this case, that sometimes contracts waive statutory rights, it's ignoring a really important question of whether a contract did so in a particular case, or whether the contract even can. And that question is particularly salient in this case. We agree with what you're saying about the tension, possible tension between waivers of contract rights and waivers of statutory rights, and still uphold the waiver, still uphold the resort to the Olin standards as opposed to Babcock. I'm sorry, you're asking whether that's possible? Yeah, is it possible to not revert to the Babcock standard, not saying we should revert to the Babcock standard, and still affirm what you're saying about the importance of making sure that both the contract right and the statutory rights are addressed? I see. It is not possible to uphold the standard announced in this case, and still maintain that distinction between statutory and contract rights. If your honors agree. The standard announced in this case is the old Olin standard, correct? No, your honor. It is Olin on steroids. And the difference is that under Olin, the board would often hold that it was repugnant to defer to a grievance resolution that did not state its basis, that did not say how it's treating the statutory claims. And that's something that this court held was confounding two separate issues. But at least it meant that the board didn't defer to grievance resolutions that did not state their basis. In this case, in footnote six, on page five of the appendix, the board cuts off that option. It says that deferring to a decision that does not say how it treats the statutory claim is not repugnant. That the question of whether the statutory issue was considered at all is only relevant to the adequately considered problem. Now, that might sound like the board is adopting the approach that this court took in general warehouse. But the problem is that adequate consideration does not require actual consideration. So a statutory, it's a term of our adequate consideration as defined by this board. A statutory issue is adequately considered unless the party opposing deferral can prove that parallel facts were not generally presented. So if the panel, as it did in this case, says nothing about the statutory issue, that does not mean it was not adequately considered. It does not mean it was repugnant. And it actually deprives the party opposing deferral of anything with which to work when trying to meet its burden, his burden in this case, to prove that the reasoning was repugnant to the act. So that's an important distinction between this case and Olin. And it goes directly to the point, to the question asked by Judge McKee of whether the court can, in this case, uphold the board's decision while maintaining the contractual and statutory distinction. And it cannot. But in this case, in this case, didn't this contract incorporate all of the rights under the NLRA? No, Your Honor. What this contract incorporated was the right to hold union office and to union membership or activities. And the act is broader than that. It does support the right of employees to support their union and engage in union activities. It also protects the right of employees to engage in anti-union activities and to oppose those who hold union office. It gives all... But the rights that were incorporated into the contract, weren't they front and center in Atkinson's grievance and his arbitration? Well, we don't know. I mean, it seems like, first of all, his grievance focused on he was being discharged because of anti-union activity. So by necessity, wasn't that question before the arbitrator? Well, it wasn't an arbitrator, Your Honor. It was a joint panel of... Well, before the joint panel, yeah, at the arbitration. So we know that he attempted to make the argument, but that doesn't mean that they ruled on it. There are many examples when it's not ruled on. And we also don't know whether their decision was consistent with the act. For example, is union activity include opposing the union? And because the NLRA protects opposing the union, if the contract is not, then the statutory issue hasn't been decided. And keep in mind, the individuals making this decision are those opposed by Mr. Atkinson's activity. And the UPS took the position before the board that the dissident activity was protected neither by the contract nor by the act. So we don't know that the statutory issue raised by Atkinson was considered by the joint panel. And we certainly don't know that the resolution adequately protected the rights entrusted to the NLRB. When the NLRB in its brief asked, portrayed its rule as an inference, but it is asking this that an argument was made before the panel. First that it was actually considered and ruled upon, but adequately protected the rights under the act. Yes, the board is asking you to presume not one but two things from the fact that Atkinson made an argument before the joint panel. It's asking you to presume both that the panel ruled on that question, and also that it did so in a way that adequately protected the rights under the act. Because there's nothing in the opinion to assess that. And because the board's task puts the burden on the party opposing deferral to prove repugnancy, if there's nothing to work with, then it's automatically deemed adequately protective. The repugnancy test is automatically found in favor of the grievance decision. And the structure of the test makes deferral most common, nearly automatic in this case, where it is least warranted. In a situation such as the joint panels, where no reasoning is given, where, as explained well in the amici brief, presentation is often hasty, you have individuals who have interests with respect to the particular issue as well. If I might, I'd be more than happy to answer additional questions about the We've deferred to the board's deferral standards in the past. Why should we not do so this time? Respectfully, your honor, you have consistently applied the standard that if the interpretation is reasonable, then this court will uphold it. But neither this circuit nor the others have in general warehouse held that it was improper not to have a separate requirement that the statutory issue actually be considered. What the board did in Olin was use this repugnancy argument that I just, I'm sorry, what the board did in general warehouse was to use this repugnancy standard that I mentioned earlier. And this court held that that was incorrect and that it was necessary to avoid abdication that the grievance panel or arbitrator have actually considered the statutory issue. And in general warehouse, in Hammermill, in Siva Gagy, in Al Bryant, and in Yellow Freight, this court held that it's abdication not to, to defer to a decision that does not explain what it did to the statutory issue. And other circuits agreed. The DC circuit in D.A.R. reversed and remanded a decision under Olin because Olin did not adequately consider the relationship between the statutory and contractual rights. Taylor also reversed and remanded in Olin. And I've seen a lot of statements in the NLRB's decision and its briefing to the effect that courts don't mind Olin, didn't mind Olin, but they never actually dig into a case and say, this is how this case held, that it is acceptable to defer when you don't know the basis of what you're deferring to. And here's why that's rational. You mentioned that you had another point you wanted to make, but your time was up a while ago. Your clock actually went off after I was signaled about this time. So we'll hear back from you on rebuttal. I'm sorry, so would you, we'll turn to the other parties now? Yeah, if you don't mind, let's go to Mr. Heller and Ms. Asbritt and come back to you. Mr. Heller? Yes, good afternoon. May it please the court. Joel Heller for the National Labor Relations Board. Federal labor law favors grievance arbitration as the means for resolving workplace disputes. So for decades, the board has maintained a policy of deferring to grievance arbitration decisions when faced with related unfair labor practices. The deferral standard that the board reaffirmed in this case has been the law for 30 years. It strikes a balance between twin statutory commands in the board's area of expertise. It is reasonable and thus worthy of this court's respect. But, you know, the standard assumes under Factor 1, under, I guess, both Olin and Babcock, that the proceedings being deferred to be fair and regular. This proceeding that Atkinson had to deal with, it strikes me as it wouldn't even pass the laugh test. And you've got Ms. Fisher, who clearly makes statements that would appear to be a vigorous advocate for Mr. Atkinson, but he was in opposition to her. He was no friend of the unions. She's an elected official, so arguably she's going to say what she needs to say to maintain favor with the union membership. But he has to go before a tribunal that is composed of four folks, each one of whom seemed pretty hostile, if not to him personally, at least to those causes that he promotes. So why would we want to defer to a ruling that came out of a tribunal like that, even under Olin, which is fair and regular proceedings? But what's fair about that is, and this goes to the application of the standard to this case, and the board recently found, or the board did not abuse its discretion, and that's the standard, abuse of discretion, in finding that Atkinson's claims of irregularity were unfounded. They were speculation. We know that we don't, we know that there was perhaps some dispute between Fisher and between Atkinson. They maybe didn't like each other, but there's no evidence that that bled over into the adequacy of her representation. As you mentioned, she advocated on his behalf. She went to the panel, and said this discharge was improper, it should be vacated. If she was trying to get rid of him, she didn't do a very good job of it. And same with the panel. There's no evidence of bias. That is correct, that is correct. He's no longer working there. But there's nothing that indication that came from anything that Miss Fisher did. There is, the board has long rejected that there's any kind of inherent conflict between grievance and their union representation, when the grievance did not support the majority union. And in fact, did so in a case enforced by this court called Tubari Limited. And the same thing with the panel, there's no evidence of bias from these members. Several of them, or all of them, had had helped in some fashion, we don't know what fashion, negotiate the contract that Mr. Atkinson opposed. But that was almost two years before the hearing. I would also like to point out specifically that this same panel had heard an earlier grievance from Mr. Atkinson, in which they actually downgraded an earlier discharge to a suspension. So if they had some vendetta against him, if they were looking for a way to get rid of they could have done so already, but they didn't. And that suggests that Mr. Atkinson needs to come forward with some evidence to show that they were biased. He hasn't, it's his burden of proof. So the board did not abuse its discretion in finding that was unfounded speculation. And one last point on this before going back to the standard, if I may, is that the fair and regular standard in some ways embodies due process principles. And Mr. Atkinson was present himself at the hearing. He testified. His friend and fellow dissident, Mark Kerr, was there who also testified on his behalf. So he was not solely within, he had the opportunity to make his case himself. Going back to the standard for a moment, and this clearly is the same as the Olin standard, the board specifically said it was re-adopting. Can I interrupt you there for a minute? When I asked that same question of your friend, whether this wasn't just a return to the Olin standard, she said, no, it's not. This is different. It's the Olin on steroids. Do you agree with that characterization? I do not agree with that. There isn't, there's, it's the same, it's the same factors that's in the Olin test. Atkinson points to this footnote in the board's decision, but all that's saying is that the inquiry into whether the arbitrator adequately considered the statutory issue is a separate prong than the repugnancy prong. But that has always been the case. It's in that very same footnote, the board is saying that, that the earlier cases suggested they were separate prongs and will continue to do so, to treat it that way. And this court came to the same conclusion in General Warehouse in footnote 12. It's talking about how they're two separate prongs of the analysis. So there's nothing new in, in this case than what, than wasn't there in Olin. And so the Olin standard that the board readopted here, that Atkinson is wrong to suggest that it does not look to whether the board considered, or sorry, whether the arbitrator considered the statutory issue. The board will find for deferral purposes that the statutory issue is adequately considered. How can it make that And it's not just itself, just proceeding. It is both. It is, it is, sorry. It's really an almost an unreasoned decision with very little to explain what the board did. Well, two points, your honor. One is even if you look just at the decision itself, which is, which is not the approach the board takes, it does say that they determined there was no violation of any contract provisions. That includes article 21, which is essentially a contractual codification of section 8A3 of the NLRA. It prohibits anti-union discrimination, discrimination based on union activity. That article was front and center in Atkinson's grievance. It was discussed at the proceedings and the grievance panel said that provision was not violated. And then if you're not looking just at the four corners, if you're looking at the proceedings themselves, you look at the written filings, you look at the testimony and Atkinson's union activity was a point of conversation throughout that whole process. So we know the issue, the statutory issue was presented to the grievance panel. And it is reasonable to say that in a issue that is presented to an arbitrator is considered by an arbitrator. And that is in line with the statutory policy favoring grievance arbitration. It recognizes the frequent congruency between statutory and contractual claims. And it trusts the grievance arbitration process because it trusts the arbitrator to, or it's reasonable to say that an arbitrator considers issues and matters that are placed before her. Atkinson's contrary argument would assume that an arbitrator ignores those issues. In this particular case, even if the board was correct in adopt, re-adopting the Olin standard, did the board adequately explain the facts which supported its conclusion that the proceedings were fair? And did the board explain why it declined to follow its usual rule on the inability to defer to the June 20th grievance? So the board discussed at page 10 of its opinion that the fair and regular analysis, and also in footnote 29, the board says it was, Atkinson's arguments are unfounded speculation. And the board detailed the actions that the union took, or that Fischer, Ms. Fischer took in representing, including filing a brief. And also talks about how there was no evidence, this is in that footnote, of bias that occurred. And that is not an abuse of discretion for the reasons I've discussed. It noted in footnote 5 of its decision that the June 20th discharge has no bearing on the October, on the October discharge, and thus no bearing on the deferral issue. Because the October discharge, if it was was conclusive as to Mr. Atkinson's termination. And so there was no, even if the June 20th discharge had been overturned by a grievance panel or by the board, the October discharge still would have stood. And as to the point about statutory and contractual claims, well, it's long been discussed by courts that there's not a stark distinction between those two. And certainly there has been deferral to grievance arbitration on statutory issues. I mean, this court's decision in Pincus Brothers at the very beginning, in the early 80s, spoke to the benefits of the board deferral standard. I'd also point you to the D.C. Circuit's en banc decision in Hammondtree. But also just as a matter of common sense, any time, if there was, if the policy in favor of grievance arbitration was really limited to contractual issues, then there would be no board deferral doctrine. Because every time there's the issue of board deferral, there's necessarily a statutory issue involved. That's why it's a board case. And so it can't be the case that you only defer to contractual issues, because then there would be no board deferral at all. And that's clearly contrary to decades of Supreme Court, this court's standard cases, and also the statutory text itself. And there are, these courts, this court's earlier decisions, I would point out, all affirmed board decisions not to defer. So it was not rejecting anything in the board standard. The only example is Pincus, the only contrary example is Pincus Brothers, where the board did not defer, and this court said it should have deferred. So there's clearly a history of this court supporting the deferral doctrine. And Atkinson quotes to General Warehouse in these earlier cases, but those, of course, predated Olin. So it cannot be said that they were in any way commentary on Olin. And so as a matter of common sense, they can't say that this court has ever criticized or rejected Olin. Two other standard, what Atkinson proposes here. But post Olin, both of those cases, both of those courts subsequently applied Olin as the standard. They did not see their earlier decisions as foreclosing enforcement of board orders applying Olin. This court shouldn't have, the same should be true in this court, as a matter of common sense, also as a matter of administrative law under brand X principles. Anytime there is a decision that is, arbitral decision that is improper or impermissible, as Atkinson suggests, that is taken care of under the repugnancy prong of the board's analysis. It will take out those cases, such as the Mobil Oil case we cite in our brief, which was about an individual who was discharged for dissident union activity. The arbitration affirmed that discharge. The board declined to defer and said that that was a repugnant decision. And the point with that is that we're not writing on a blank slate here. Olin has been the standard for over, for 30 years. We know how it works in practice. We know that the board does not automatically defer under the case, under that standard. If the problems that Atkinson suggests would happen under Olin were going to happen, we would have seen it already. But we haven't. The board has returned to the Olin standard. That is an exercise of its discretion and its authority to enforce the federal labor laws, to strike a balance between the statutory commands in the statute the board is tasked with enforcing. It is reasonable. And at the end of the day, that's what this court needs to determine in order to enforce, whether it is a reasonable position. It doesn't need to decide whether of any other position would be impermissible. As long as the board's standard is reasonable and consistent with the act, the board can, or this court can affirm. Thank you. Ms. Asbrock? Thank you, your honor. May it please the board, intervener UPS would like to focus its time on the fair and regular prong of the Spielberg-Olin test as applied to the facts of this case. Which revealed that the board did not abuse its discretion in finding the petitioner and presented no evidence other than conjecture of any conflict of interest at his will. He urges the court to presume that conflict exists anytime a union member loses an election against an incumbent officer or opposes ratification of on union election campaigns, collective bargaining cycles, or union dissident activities and factions. There instead has to be something more. And that is to establish that hearing was not fair and not regular based on either an actual or apparent conflict of interest. The petitioner was obligated to present affirmative evidence, concrete evidence, not only that he engaged in specific protected activity, and we'll talk about that in a moment, but also that each of those panel members was aware of that activity, viewed it as uniquely attributable, and harbored animus toward him as a result. Except for the last factor, is there any dispute about the things given his campaign against the folks who are charged with judging the accuracy of his charges? Is there any issue about at least the apparent hostility? Forget actual hostility, but isn't the apparent hostility clear on the face of this? The apparent hostility toward Mr. Atkinson is not clear, Your Honor, based on his opposition to the Pennsylvania Supplement. He's one of thousands of people who opposed this supplement, and his comrade, many of whom testified for him at that panel hearing, Robert Larimer, Mark Kerr, are still gainfully employed, although they too have had, you know, discipline at times, not related to the same incident, but they remain employed today. So there frankly is just no evidence that these panel members even knew who Mr. Atkinson was. What about statements that he was on the management's radar? That's a statement that the judge, the ALJ, made a credibility determination that it had been made by a center-level manager, and there is no evidence that that statement was made to anyone other than to Robert Atkinson himself. There's no evidence that it was made to any labor manager, much less labor managers from Denny Gandy, who was the regional labor manager from another city in Pennsylvania. There was Steve Rattigan on behalf of UPS, who was from Virginia. And then for the Teamsters, there was Teamsters local 585, Jim Barrows, and Tom Heider from local 110 from Washington and Eden Square, Pennsylvania, respectively, both over and out of the way. So Mr. Gandy is the only person with whom Mr. Atkinson had any sort of personal history, I guess you could say, and that history is the prior panel that Mr. Gandy sat on. I believe it was referenced by Mr. Heller earlier. There was three grievances that I believe were heard in November of 2014, and all three of those grievances, Mr. Gandy was on the panel to hear, and all three of them had been reduced by the panel that Mr. Gandy was on, and he was a unanimous decision maker. Your time, you only reserve three minutes, and it's been up for a couple of minutes, but could you just take a minute and just very, very quickly sum up? Certainly, absolutely. You know, unlike the cases in Petitioner's brief, there's no evidence that any of these panel members were independently aware of Petitioner's activities, and perhaps most importantly, when the Petitioner was specifically asked at the panel hearing what his protected activities were that gave rise under the NLRA as Article 21 was cited, he specifically said, and this is the testimony that's in the record about this, that he was a vigorous union steward for others, and that he was wearing a union button. So even at that time, he did not take the opportunity to raise his vote no activities to discuss the fact that he believed that the or to complain about Betty Fisher's, you know, alleged inappropriate representation, and at the end of the hearing, he also had the opportunity to answer the question about whether he had been fairly represented and given the opportunity to fully present his case, and there is no evidence that he answered either of those questions in the negative. Thank you, Your Honors. Thank you very much, Ms. Essmer. Ms. Pyatt, you reserved a few minutes. Thank you, Your Honor. I want to start with the claim that this proceeding was fair and regular. There are a number of factual assertions that have been made that were not found either by the ALJ or the Board, and this is why the Board should have actually engaged the facts to give Your Honors an ability to review a factual record in an appellate stance rather than digging through testimony in the way that an ALJ would. In this case, Mr. Atkinson led a movement that held up a national agreement covering almost a quarter million of workers. The UPS and the company jointly campaigned against Mr. Atkinson's vote no campaign, and they were unable to defeat it through voting. Therefore, the teamsters had to amend their constitution, their international constitution, to preclude the necessity for a vote because they just couldn't force this contract through. Dennis Gandy monitored this activity. He's one of the two. He was the company's co-chair of this panel. He monitored it. When the window signs went up for which the ALJ found that Atkinson was terminated, the window signs, he forwarded them to the top labor relations person in the country and asked, do we have to put up with this? Do we have to tolerate this? And the top person said, you have to be careful because we've had a near miss with the NLRB on that. And so he, Mr. Gandy, told the local managers to keep monitoring the activity and be careful. And the NLRB would designate Mr. Gandy to determine whether those same window signs were the reason that those local managers that Mr. Gandy told to monitor that activity, they would now have Mr. Gandy say whether that was the reason for Mr. Atkinson's termination. The, after the, uh, Ms. Fisher, all the other members of the panel were also part of this campaign and part of the bargaining. Ms. Fisher was as well. Mr. Atkinson also ran against her for office. And it's not merely that he ran against her for office. She alerted UPS was constantly keeping them updated on his activity. She sent them supporter lists, which is information that ACT recognizes needs to be confidential. She sent them his complaints about the inadequacy of her representation in the grievance process that this panel was about to decide. And she suggested to his supervisor that he might be campaigning against her on the plot, which would be grounds for termination. She was trying to get him fired and the NLRB would delegate to her the job of getting him his job back. So it's not speculation to say that there is some sort of causation requirement that's not consistent with the case law, nor is it what the board in this case held. The board did not engage the case law, but what the case law says is that whether there's hostility or an apparent conflict of interest, if the board wants to change that standard, it needs to do so explicitly. And that's why there should not be deference to the board's decision on the fair and regular. Um, the Mr. Heller, uh, stated that the, um, that Olin has been supported or upheld by the courts. Um, the courts have said of Olin that it is its central premises, abdication, illogical, vacuous Kentucky windage causes them profound doubts, gives away too much of the board's responsibility and lacks a coherent theory. Yes, Olin was around a long time, but its track record is long and ugly. Not only this circuit in general warehouse, hammer mill, Al Bryant, Siva, Gaby, and yellow freight, but the first, the sixth, the ninth, the 11th and the district of Columbia have all held that it is improper for the board to defer statutory issue to a grievance decision when it does not know how the grievance decision decided the statutory issue. Thank you very much. Appreciate the arguments of our council and we'll take the matter under, uh, under advisement.